**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No.: ____________________________

JOSEPH YEAGER, on behalf of himself and all others similarly situated,

Plaintiff,

v.

DIAMOND SIGHT, LLC D/B/A JUDDS GLASS & MIRROR, a Colorado limited liability company, and
ANDREW WILLIAMSON, an individual,

Defendants.

---

**COMPLAINT AND JURY DEMAND**

---

Plaintiff Joseph Yeager ("Yeager" or "Plaintiff"), on behalf of himself and all others similarly situated, by and through Leventhal Swan Taylor Temming PC, complains as follows:

**NATURE OF THE ACTION**

1. This action is brought on behalf of all hourly employees holding comparable positions with different titles ("Hourly Employees")[1] employed by Diamond Sight, LLC d/b/a/ Judds Glass & Mirror ("Diamond Sight") and Andrew Williamson ("Defendant Williamson") (collectively "Defendants") in Colorado during the last three (3) years, plus any period of tolling, and who were not properly paid regular or overtime wages.

2. This case is brought as a collective action under 29 U.S.C. § 216(b) of the Fair

[1] Defendants employed similarly situated Hourly Employees in numerous roles including "glazer," "window installer," "interior window installer," "lead installer," "installer," "salesperson," and others.

Labor Standards Act ("FLSA") of 1938, 29 U.S.C. §§ 201, *et seq*. Plaintiff alleges that Defendants violated the FLSA by failing to pay Hourly Employees required overtime compensation. Plaintiff alleges that Defendants further violated the FLSA by requiring Plaintiff and other Hourly Employees to perform pre- and post-shift overtime work (*i.e.*, "off-the-clock" work) for which they were not paid.

3. Plaintiff also asserts a claim for retaliation under 29 U.S.C. § 215(a)(3) of the FLSA. Plaintiff was terminated in retaliation for filing a complaint against Defendants with the United States Department of Labor, Wage and Hour Division (the "Department").

4. This case is also brought as a class action under Fed. R. Civ. P. 23 pursuant to the Colorado Overtime and Minimum Pay Standards Order ("COMPS Order"), 7 CCR § 1103-1, and the Colorado Wage Act ("CWA"), C.R.S. § 8-4-101. Plaintiff alleges that Defendants violated the COMPS Order by failing to pay Hourly Employees all overtime compensation at applicable rates as required by law and prohibiting Hourly Employees from taking uninterrupted meal breaks as required by law and failing to provide compensation, including overtime compensation, for said work. Plaintiff alleges that Defendants further violated the COMPS Order and CWA by requiring Plaintiff and other Hourly Employees to perform pre- and post-shift work (*i.e.*, "off-the-clock" work) for which they were not paid

5. Plaintiff also alleges that Defendants retaliated and discriminated against him in violation of the COMPS Order and CWA for filing a complaint against Defendants with the Department.

6. Plaintiff further alleges that Defendants failed to pay him wages for his final day of work on September 11, 2025 as well as remaining accrued, unused vacation time in violation of

the CWA.

## JURISDICTION AND VENUE

7. This Court has original federal question jurisdiction pursuant to 28 U.S.C. § 1331 because Plaintiff alleges claims under the FLSA.

8. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367 because the state law claims are so related to the FLSA claims that they form part of the same case or controversy.

9. Defendant Diamond Sight is subject to personal jurisdiction in this District because it is a Colorado limited liability company. Diamond Sight is registered as a Colorado limited liability company, maintains its headquarters and primary office in this District, avails itself of the privilege of conducting substantial business in this District, and is otherwise at home in this District. Diamond Sight operates throughout Colorado.

10. Defendant Williamson is subject to personal jurisdiction in this District because he is a domiciliary of this District, avails himself of the privilege of conducting substantial business in this District, and is otherwise at home in this District. Defendant Williamson is the owner, principal, and primary manager of Diamond Sight.

11. Defendants are subject to personal jurisdiction in this District because this action arises out Defendants' illegal pay practices and other illegal actions that caused damage to Plaintiff and other Hourly Employees in Colorado.

12. Defendants have availed themselves of the privilege of conducting substantial business in Colorado, where Plaintiff resides and worked for Defendants and certain of the acts and omissions alleged herein arise out of Defendants' activities in Colorado.

## THE PARTIES

13. Plaintiff is, and was at all times relevant to this action, an adult individual domiciled in Woodland Park, Colorado.

14. Defendant Diamond Sight is a Colorado limited liability company. Diamond Sight maintains its principal place of business at 401 North Rampart Range Road, Woodland Park, Colorado. Diamond Sight is registered in Colorado as a domestic limited liability company.

15. Mr. Williamson is the founder, principal, and manager of Diamond Sight. Mr. Williamson oversees Diamond Sight's operations including business strategy and development, compliance, customer relations, and budgeting. He is also responsible for related executive functions. Mr. Williamson was and is vested with the authority to carry out the wage and hour policies of the Diamond Sight and in fact did so. Accordingly, Defendant Williamson is an employer as defined by federal and state law.

16. Defendants are primarily in the business of producing and installing glass products (*e.g.*, windows, shower doors, mirrors, etc.) across the state of Colorado.[2] Defendants serve commercial and residential customers.

## COLLECTIVE ACTION ALLEGATIONS

17. Plaintiff seeks to prosecute his FLSA claim as an "opt-in" collective action on behalf of all persons who are or were employed by Defendants as Hourly Employees in Colorado at any time in the last three (3) years, plus any period of tolling, through the entry of judgment in this case and who were not paid overtime for all hours worked in excess of 40 in a work week ("Collective") inclusive of off-the-clock work and work performed through meal breaks.

---

[2] https://www.juddsglass.com/ (last accessed September 23, 2025).

18. Plaintiff will fairly and adequately protect the interests of the members of the Collective and has retained counsel who are experienced and competent in the fields of wage and hour law and collective action litigation. Plaintiff has no interest contrary to or in conflict with the members of the Collective.

19. The members of the Collective are similarly situated because, among other things, they were all victims of the same company-wide policies and procedures that failed to pay them all the wages to which they are entitled under the FLSA.

## **CLASS ACTION ALLEGATIONS**

20. Plaintiff sues on his own behalf and on behalf of a class of employees under Rules 23(a), (b)(2), and/or (b)(3) of the Federal Rules of Civil Procedure based on Defendants' violations of the COMPS Order and the CWA.

21. Plaintiff brings his Colorado state law claims on behalf of all employees who were employed by Defendants in Colorado as Hourly Employees at any time in the last three (3) years, plus any period of tolling, through the date of the entry of judgment in this case who hold or held the position of Hourly Employee and were not paid (a) overtime wages required by law; (b) regular straight time and/or overtime wages for work performed off-the-clock (*e.g.*, pre- and post-shift sales work, time worked through meals, etc.) worked below, at, or above 40 hours in a work week; and (c) unpaid commissions for sales made within the scope of Hourly Employee work ("Wage Class").

22. The members of the Wage Class are so numerous that joinder of them is impracticable. Although the precise number of such persons is unknown, and the facts on which the calculation of that number are presently within the sole control of Defendants, on information

and belief, there are dozens of members of the Wage Class.

23. Plaintiff's claims are typical of the claims of the members of the Wage Class. Plaintiff performed the same essential job duties as the members of the Wage Class; Defendants paid Plaintiff and the members of the Wage Class pursuant to the same policies and procedures; and Plaintiff and the members of the Wage Class were victims of the same wrongful conduct in which Defendants engaged in violation of the COMPS Order and the CWA.

24. The class action mechanism is superior to any alternatives which may exist for the fair and efficient adjudication of this cause of action. Proceeding as a class action would permit the large number of injured parties to prosecute their common claims in a single forum simultaneously, efficiently, and without unnecessary duplication of evidence, effort, and judicial resources. A class action is the only practical way to avoid the potentially inconsistent results that numerous individual trials are likely to generate. Moreover, class treatment is the only realistic means by which injured parties can effectively litigate against corporate defendants like Defendants. Numerous repetitive individual actions would also place an undue burden on the courts as they are forced to take duplicative evidence and decide the same issues relating to Defendants' conduct.

25. Defendants have acted or refused to act on grounds generally applicable to the Wage Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Wage Class as a whole.

26. Plaintiff is committed to pursuing this action and have retained competent counsel who are experienced in wage and hour law and class action litigation.

27. Plaintiff will fairly and adequately protect the interests of the members of the Wage

Class.

28. There are questions of law and fact common to the Wage Class which predominate over any questions solely affecting the individual members of the Wage Class including but not limited to:

a. Whether Defendants employed the members of the Wage Class within the meaning of the COMPS Order and the CWA;

b. Whether Defendants' policies and practices described within this Complaint are illegal;

c. Whether Defendants properly paid the members of the Wage Class for all hours, including hours worked below, at, and beyond 40 hours in a work week and/or 12 hours in a work day;

d. Whether Defendants properly tracked and/or calculated the number of regular and overtime hours payable to the members of the Wage Class based on their work below, at, and beyond 40 hours in a work week and/or 12 hours in a work day;

e. Whether Defendants properly paid members of the Wage Class earned, vested, and determinable commissions;

f. Whether Defendants properly paid members of the Wage Class for sales and other work performed after regular business hours;

g. Whether Defendants permitted members of the Wage Class to take uninterrupted meal break as required by state law;

h. Whether Defendants properly compensated members of the Wage Class for hours worked during interrupted meal breaks;

i. Whether Defendants properly compensated members of the Wage Class for accrued paid time off;

j. What proof of hours worked is sufficient where, as here, Defendants failed in their duty to keep and maintain accurate time records; and

**k.** Whether Defendants are liable for all damages claimed hereunder.

## STATEMENT OF FACTS

***Defendants' Illegal Pay Practices***.

29. Defendants own, operate, and manage a business which provides glass products and installation of the same to residential and commercial customers across Colorado.

30. Hourly Employees follow standardized processes involving well-established policies and procedures implemented by Defendants, and they work within closely prescribed limits imposed by Defendants. Defendants employ all Hourly Employees and establish their pay practices.

31. Hourly Employees are classified as non-exempt employees and are paid by the hour. Defendants failed to pay overtime wages for hours worked over 40 in a work week or 12 in a work day. Defendants also failed to pay other wages to Plaintiff and Hourly Employees.

32. Defendants employed Plaintiff as a window installer from May 6, 2024 to September 11, 2025. Plaintiff worked at Defendants' Woodland Park location but was assigned by Defendants to work sites across Colorado.

33. Plaintiff received an offer letter from Defendants which stated he was to work from 8:00 a.m. to 5:00 p.m. Monday through Friday (*i.e.*, 45 hours per week) and receive $25.00 per

hour.[3] The offer letter stated that Plaintiff's job was a "dual part" position that included sales duties. Defendants' offer letter stated that Plaintiff's sales duties were "expected to be worked primarily after normal working hours, or when all tasks of the full-time position are completed." The offer letter stated that Plaintiff would receive 20% of the net profit as a sales commission.

34. Plaintiff's assigned schedule was 45 hours per week, but he regularly worked between 50 and 60 hours per week. At times, Plaintiff worked more than 60 hours per week. Plaintiff did not receive overtime pay.

35. Plaintiff's primary job duties included mostly manual labor. Plaintiff was also required to perform sales work (*e.g.*, draft sales pitches and agreements, make sales calls and communications, etc.) after his shifts.

36. Defendants controlled Plaintiff's work assignments and set his schedule. Plaintiff frequently worked more than his assigned schedules. Plaintiff regularly worked 10-12 hours or more in individual work days. Plaintiff worked before and after assigned shifts at Defendants' specific direction due to the demands of Defendants' business and to complete mandatory sales duties.

37. Plaintiff was only paid for 40 hours each week even though he nearly always worked more. Defendants scheduled Plaintiff for 45 hours each week but only paid him for 40 because Defendants automatically deducted one hour each day for a purported meal break. However, Plaintiff was virtually never able to take an uninterrupted meal break due to the demands of Defendants' business.

38. Plaintiff regularly worked more than 40 hours each week, such that time spent

---

[3] Plaintiff later received a modest raise to $28.00 per hour.

working through meal breaks for which he was not paid due to Defendants' auto-deduction policy constituted overtime work which should have been paid to Plaintiff at his overtime rate of pay.

39. Plaintiff worked additional hours after his shits to perform sales tasks required of him. Plaintiff spent at least several hours per week performing sales duties after hours at Defendants' office or at home. Plaintiff was never paid hourly wages for the off-the-clock sales work Defendants required of him. Because Plaintiff regularly worked more than 40 hours each week, the time spent performing sales duties after-hours constituted overtime work which should have been paid to Plaintiff at his overtime rate of pay.

40. Defendants never paid Plaintiff his earned sales commissions as outlined in the offer letter. Plaintiff's sales commissions were earned, vested, and determinable.

41. Defendants did not use a timekeeping system of any kind. Instead, Defendants simply used a 40-hour placeholder on his paystubs to give the appearance that he only worked 40 hours each week. Defendants purposefully capped wages at 40 hours each week under the guise of "guaranteeing" payment of 40 hours per week to accommodate times when Plaintiff did not work 40 hours in a week. In practice, Plaintiff almost always worked more than 40 hours each week, but Defendants would not compensate him for such hours.

42. Plaintiff's paystubs only reflected fewer than 40 hours each week if he used accrued paid time off. But when Plaintiff used accrued paid time off, Defendants deducted the same number of hours from his regular 40 hours of pay, thereby cancelling out use of the same. Thus, Plaintiff did not receive a benefit from his accrued paid time off.

43. Because Defendants did not compensate Plaintiff and Hourly Employees for any hours worked over 40 in a work week, they are owed the entire 1.5x rate for hours worked over 40

in a work week.

44. Plaintiff's job duties and tasks were highly regulated and controlled by Defendants on a step-by-step and incremental level. Plaintiff and members of the Collective and Wage Class were prohibited from exercising discretion and independent judgment as to matters of significance within Defendants' operations.

45. Plaintiff and members of the Collective and Wage Class were directed by Defendants to strictly adhere to corporate policies implemented by Defendants.

46. Plaintiff and members of the Collective and Wage Class participated and engaged in essential job duties and tasks on a daily basis that directly related and contributed to Defendants' primary business of providing glass installation services to customers for profit.

47. Defendants illegally applied their wage policies as to Plaintiff and members of the Collective and Wage Class.

48. Plaintiff and members of the Collective and Wage Class regularly worked more than 40 hours each week but never received overtime premiums at the legally required rates for hours worked over 40 in individual work weeks and/or 12 hours in a work day.

49. Plaintiff and all other Hourly Employees were employed under identical or substantially similar terms. All Hourly Employees were provided identical or substantially similar copies of offer letters, employee handbooks, and other employment documents at the start of their employment. The common terms of employment for Hourly Employees, including the pay practices identified herein, were intentionally and purposefully made identical by Defendants.

50. The uniform and common practices and policies implemented by Defendants, including the job duties and compensation structure, applied to all Hourly Employees, including

Plaintiff.

51. Defendants continue employ to members of the Collective and Wage Class as alleged herein.

52. Plaintiff and members of the Wage Class were entitled to the wage protections afforded by the CWA which apply to timely payment of all earned wages.

53. Defendants failed to pay Plaintiff and members of the Collective and Wage Class regular and overtime wages or commissions.

54. Defendants failed to pay Plaintiff and members of the Collective and Wage Class earned regular wages for certain hours worked below and up to 40 hours in a work week.

55. Defendants have uniform policies and practices to not pay Hourly Employees for all hours worked below at, and above 40 each work week and/or 12 work day at the legally required rates.

56. Defendants' violations of the FLSA are not in good faith. Defendants are, and have been, well aware of their legal obligation to pay overtime compensation to Plaintiff and members of the Collective.

57. Defendants' violations of the CWA are not in good faith. Defendants are, and have been, well aware of their legal obligation to pay all earned wages to Plaintiff and members of the Wage Class.

***Defendants' Illegal Discrimination, Retaliation, and Termination of Plaintiff*.**

58. Over the course of his employment, Plaintiff questioned Defendants' wage practices and raised concerns and complaints about the policies to Defendants, particularly Jeff Benton and Defendant Williamson, to no avail. Plaintiff made several verbal complaints about

lack of overtime and requested overtime pay via text message at least once.

59. In late July or early August 2025, Plaintiff submitted a complaint about Defendants' wage practices to the Department while he was still employed by Defendants.

60. On September 11, 2025, investigators from the Department conducted an unannounced, on-premises investigation of Defendants based on Plaintiff's complaint. The Department interviewed Defendants' employees including Plaintiff.

61. The Department conducted interviews in various offices on Defendants' premises. Unbeknownst to the Department, each office was under video and/or audio surveillance by Defendants. Defendants, using surveillance recordings, eavesdropped on the Department's interviews, including the Department's interview with Plaintiff. During Plaintiff's interview, he discussed his initial complaint with the Department.

62. Later on in the day, during Plaintiff's interview, he advised the Department that all rooms in the business were under surveillance; the Department then concluded its interviews and left the premises.

63. Immediately after the Department left the premises, Defendants terminated Plaintiff effectively immediately. While Defendants claimed Plaintiff was fired for tardiness, this was untrue. Defendants terminated Plaintiff because they learned he had filed a complaint with the Department about their wages policies. Plaintiff was terminated in direct retaliation for exercising his rights under the FLSA, COMPS Order, and CWA.

64. Defendants retaliated and discriminated against Plaintiff for making a wage complaint pursuant to the FLSA, COMPS Order, and CWA. Defendants retaliated against Plaintiff for raising a wage complaint by terminating him.

**FIRST CLAIM FOR RELIEF**
**FAIR LABOR STANDARDS ACT – COLLECTIVE ACTION**

~~66.~~65. Plaintiff incorporates by reference all preceding paragraphs of this Complaint.

~~67.~~66. At all relevant times, each Defendants have been, and continue to be, employers engaged in interstate commerce within the meaning of the FLSA.

~~68.~~67. At all relevant times, Defendants have had gross annual revenues in excess of $500,000.

~~69.~~68. At all relevant times, Defendants employed, and/or continue to employ, Plaintiff and each member of the Collective within the meaning of the FLSA.

~~70.~~69. At all relevant times, Defendants have had a uniform policy and practice to not pay overtime compensation for all overtime hours worked at legally mandated rates.

~~71.~~70. As a result of Defendants' failure to properly compensate their employees, including Plaintiff and the members of the Collective, Defendants have violated, and continue to violate, the FLSA.

~~72.~~71. As employers within the meaning of the FLSA, Defendants have a duty to create and maintain accurate records of employee hours. Defendants failed to do so.

~~73.~~72. The foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).

~~74.~~73. Due to Defendants' FLSA violations, Plaintiff, on behalf of himself and the members of the Collective, is entitled to recover from Defendants unpaid overtime compensation, liquidated damages, Defendants' share of FICA, FUTA, state unemployment insurance, and any other required employment taxes, attorneys' fees, costs, and disbursements of this action pursuant

to 29 U.S.C. § 216(b).

**SECOND CLAIM FOR RELIEF**
**FAIR LABOR STANDARDS ACT – 29 U.S.C. § 215(a)(3)**

~~75.~~74. Plaintiff incorporates by reference all preceding paragraphs of this Complaint.

~~76.~~75. In direct retaliation for Plaintiff asserting his rights under the FLSA as described above, Defendants terminated him to discriminate against and punish Plaintiff for questioning and complaining about Defendants' illegal pay practices including failure to pay overtime.

~~77.~~76. Pursuant to the FLSA, 29 U.S.C. §215(a)(3), it is illegal for an employer to retaliate against an employee for asserting rights under the statute.

~~78.~~77. Defendants' acts of retaliation against Plaintiff in response to assertion of his lawful FLSA rights violated 29 U.S.C §215(a)(3).

**THIRD CLAIM FOR RELIEF**
**COMPS ORDER – CLASS ACTION**

~~79.~~78. Plaintiff incorporates by reference all preceding paragraphs of this Complaint.

~~80.~~79. At all relevant times, Defendants employed, and/or continues to employ, Plaintiff and members of the Wage Class within the meaning of the COMPS Order.

~~81.~~80. Because Defendants were, at all relevant times, employers within the meaning of the FLSA, they were also employers within the meaning of the COMPS Order pursuant to 7 CCR § 1103-7-2.7.

~~82.~~81. Defendants violated the COMPS Order by failing to pay Hourly Employees all overtime compensation to which they are entitled at the legally required rates.

~~83.~~82. Under 7 CCR § 1103-5.1, employees are "entitled to an uninterrupted and duty-free meal period of at least a 30-minute duration when the shift exceeds 5 consecutive hours."

~~84.~~83. Defendants' failure and refusal to permit Plaintiff and members of the Wage Class to take uninterrupted meal breaks, as required by law, was in violation of the meal and rest periods provision of 7 CCR § 1103-5.1.

~~85.~~84. Because Defendants did not permit Plaintiff and members of the Wage Class to take uninterrupted meal breaks, Plaintiff and members of the Wage Class were required to work through meals but were not compensated for that time. Plaintiff and the members of the Wage Class are entitled to recover from Defendants unpaid wages resulting from work performed during meal periods.

~~86.~~85. Plaintiff and the members of the Wage Class are entitled to recover from Defendants unpaid regular wages and overtime compensation at the appropriate premium for all hours worked over 40 in a work week and/or 12 in a work day, any statutory penalties, Defendants' share of FICA, FUTA, state unemployment insurance, and any other required employment taxes, attorneys' fees, costs, and disbursements of this action pursuant to the COMPS Order.

**FOURTH CLAIM FOR RELIEF**
**COMPS ORDER – 7 CCR § 1103-8.5**

~~87.~~86. Plaintiff incorporates by reference all preceding paragraphs of this Complaint.

~~88.~~87. In direct retaliation for Plaintiff asserting his rights under the COMPS Order as described above, Defendants terminated him to discriminate against and punish Plaintiff for questioning and complaining about Defendants' illegal pay practices including failure to pay overtime wages and wages for working through meal breaks.

~~89.~~88. Pursuant to 7 CCR § 1103-8.5, it is illegal for an employer to "discriminate against any person for the purpose of reprisal, interference, or obstruction as to any actual or anticipated

investigation, hearing, complaint, or other process or proceeding relating to a wage claim, right, or rule." 7 CCR § 1103-8.5

~~90.~~89. Defendants' acts of retaliation against Plaintiff in response to assertion of his lawful COMPS Order rights violated the COMPS Order, 7 CCR § 1103-8.5.

**FIFTH CLAIM FOR RELIEF**
**COLORADO WAGE ACT – CLASS ACTION**

~~91.~~90. Plaintiff incorporates by reference all preceding paragraphs of this Complaint.

~~92.~~91. At all relevant times, Defendants employed, and/or continue to employ, Plaintiff and the members of the Wage Class within the meaning of C.R.S. § 8-104-101(5).

~~93.~~92. Because Defendants were, at all relevant times, employers within the meaning of the FLSA, they were also employers within the meaning of the CWA pursuant to C.R.S. § 8-104-101(6).

~~94.~~93. The CWA defines wages as "[a]ll amounts for labor or service performed by employees," regardless of whether "the amount is fixed or ascertained by the standard of time." Wages, as defined by the CWA, are governed by the CWA once the amounts are "earned, vested, and determinable." C.R.S. § 8-4-101(14)(a)(I)-(III).

~~95.~~94. Plaintiff and members of the Wage Class worked hours below or at 40 hours in individual work weeks which were required to be paid at their regular hourly rates of pay. *See* C.R.S. § 8-4-101(14)(a)(II)-(III).

~~96.~~95. Plaintiff and members of the Wage Class worked over 40 hours in individual work weeks and/or 12 hours in a work day which required pay at one-and-one-half (1.5) their regular hourly rates of pay. *See id*.

~~97.~~96. Once Plaintiff and members of the Wage Class worked hours below, at, and above

40 in individual work weeks, they earned regular and/or overtime wages, although they were not paid. Accordingly, any regular or overtime wages for which Plaintiff and members of the Wage Class were not paid were and are "wages" as defined by the CWA, and therefore subject to the requirements of the CWA.

98.97. Plaintiff and members of the Wage Class performed sales duties which entitled them to commissions which were not paid even though they were earned, vested, and determinable. C.R.S. § 8-4-101(14)(a)(I)-(III).

99.98. If an employer fails to pay an employee earned, vested, and determinable wages as set forth by the CWA within fourteen (14) days of service of a civil action, the employee is entitled to a penalty of two (2) times the amount of unpaid wages or compensation. *See* C.R.S. § 8-4-109(3)(b)(I).

100.99. If the employee can prove that the employer's failure to pay wages due under the CWA was willful, the employee is entitled to a penalty of three (3) times the amount of unpaid wages or compensation. *See id*.

101.100. Defendants' failure and refusal to pay earned regular and overtime wages, as demanded herein within the fourteen (14) day period was willful and in bad faith. *See id*.

102.101. Plaintiff and members of the Wage Class are owed all earned, unpaid wages and statutory penalties, including increased penalties for willful violations of the CWA.

103.102. Plaintiff and members of the Wage Class are entitled to attorneys' fees and costs incurred prosecuting claims under the CWA. *See* C.R.S. § 8-4-110.

**SIXTH CLAIM FOR RELIEF**
**COLORADO WAGE ACT – C.R.S. § 8-4-120**

104.103. Plaintiff incorporates by reference all preceding paragraphs of this

Complaint.

~~105.~~104. In direct retaliation for Plaintiff asserting his rights under the CWA as described above, Defendants terminated him to discriminate against and punish Plaintiff for questioning and complaining about Defendants' illegal pay practices including failure to pay overtime wages and wages for working through meal breaks.

~~106.~~105. Pursuant to C.R.S. § 8-4-120(a), it is illegal for an employer to "intimidate, threaten, restrain, coerce, blacklist, discharge, or in any manner discriminate or retaliate against any employee who has: (a) Filed any complaint or instituted or caused to be instituted any proceeding under this article 4 or any other law or rule related to wages [and] hours[.]"

~~107.~~106. Defendants' acts of retaliation against Plaintiff in response to assertion of his lawful CWA rights (*i.e.*, termination) violated C.R.S. § 8-4-120(a).

~~108.~~107. Plaintiff is entitled to back pay, reinstatement of employment or front pay, payment of wages unlawfully withheld, interest on unpaid wages at 12% *per annum* from the date the wages were first due, a penalty of fifty dollars per day for Plaintiff for each day that the violation occurred or continued, liquidated damages in an amount equal to the greater of two times the amount of the unpaid wages or two thousand dollars, and injunctive relief. Plaintiff is also entitled to reasonable attorneys' fees and costs.

**SEVENTH CLAIM FOR RELIEF**

**WRONGFUL TERMINATION – VIOLATION OF PUBLIC POLICY**[4]

~~109.~~108. Plaintiff incorporates by reference all preceding paragraphs of this Complaint.

[4] This claim is pleaded in the alternative should the Court determine that there is no comprehensive statutory remedy available to Plaintiff.

~~110.~~109. During the course and scope of his employment with Defendants, Plaintiff raised concerns about Defendants' violations of state and federal wage laws.

~~111.~~110. Plaintiff's activity in raising these legitimate concerns involved an exercise of statutory, regulatory, and/or rule-based rights.

~~112.~~111. Plaintiff's activity involved the performance of a public duty relating to his basic responsibilities as a citizen and an exercise of important work-related rights and/or privileges.

~~113.~~112. The proper payment of wages and compliance with federal and state law regarding wage and hour practices are mandates of public policy for purposes of establishing a claim for wrongful termination in violation of public policy.

~~114.~~113. Defendants were actually aware that Plaintiff had engaged in protected activity of filing a complaint with the Department. Minimally, Defendants reasonably should have been aware that Plaintiff had engaged in protected activity.

~~115.~~114. Defendants retaliated against Plaintiff by terminating his employment for reporting the violations of law described *supra*.

~~116.~~115. Plaintiff suffered damage as a result of his wrongful termination by Defendants in an amount to be proven at trial for which Defendants are liable.

**PRAYER FOR RELIEF**

Wherefore, Plaintiff, on behalf of himself and all other members of the Collective and Wage Class, requests that this Court grant the following relief:

a. Designation of this action as a collective action on behalf of the members of the Collective and prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all

similarly-situated members of the FLSA collective, apprising them of the pendency of this action, permitting them to assert timely FLSA claims in this action by filing individual consents to sue pursuant to 29 U.S.C. § 216(b), and tolling of the statute of limitations;

b. Certification of this action as a class action pursuant to Fed. R. Civ. P. 23(b)(3) on behalf of the members of the Wage Class and appointing Plaintiff and his counsel to represent the Wage Class;

c. A declaratory judgment that the practices complained of herein are unlawful under the FLSA, COMPS Order, and CWA;

d. An injunction requiring Defendants to cease their unlawful practices under, and to comply with, the COMPS Order and CWA;

e. An award of overtime compensation due under the FLSA and the COMPS Order;

f. An award of regular and/or overtime compensation due under the COMPS Order and CWA for hours worked through required meal breaks;

g. An award of unpaid, earned, and vested regular wages and commissions under the CWA;

h. An award of liquidated damages and/or statutory penalties under the FLSA and CWA;

i. An award of additional damages and/or statutory penalties under the FLSA and CWA because of Defendants' willful failure to properly pay regular and/or overtime compensation;

j. An award of damages representing Defendants' share of FICA, FUTA, state

unemployment insurance, and any other required employment taxes;

k. An award of damages for Defendants' unlawful retaliation against Plaintiff for asserting his FLSA rights;

l. An award of damages as and for Defendants' unlawful retaliation against Plaintiff for asserting his rights under the COMPS Order;

m. An award of damages, interest, and injunctive relief for Defendants' unlawful retaliation against Plaintiff for asserting his CWA rights;

n. An award of pre-judgment and post-judgment interest at the maximum rate permitted by law;

o. An award of costs and expenses of this action together with attorneys' and expert fees; and

p. Such other and further relief as this Court deems just and proper.

**JURY DEMAND**

Plaintiff hereby demands a trial by jury on all issues so triable.

Respectfully submitted this 30th day of September, 2025.

*/s/ Samuel D. Engelson*
Andrew E. Swan
Samuel D. Engelson
LEVENTHAL SWAN TAYLOR TEMMING PC
3773 Cherry Creek North Drive, Suite 710
Denver, Colorado 80209
Telephone: (720) 699-3000
Facsimile: (866) 515-8628
Email: aswan@lstt.law
sengelson@lstt.law

*Attorneys for Plaintiff*